RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/24/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, AFL-CIO and OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL 108 | CIVIL ACTION 09-2228 |
| | JUDGE DOHERTY |
| VERSUS | MAGISTRATE JUDGE HILL |
| PHI, INC. | |

## MEMORANDUM RULING

Pending before this Court is the Motion to Dismiss [Doc. 55] filed by PHI, Inc. ("PHI") in the above-referenced lawsuit, which has become known as the "Green Book Lawsuit" among the parties and this Court. In its motion, PHI seeks dismissal of the "Unions' claims in the Green Book" lawsuit pursuant to Fed. R. Civ. P. Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim). The Unions oppose the motion [Doc. 57], and PHI has filed a Motion for Leave to File a Reply Brief [Doc. 58], which is herein GRANTED.

I.  **Factual and Procedural Background**

The facts of the instant case are rooted in the facts of previous cases filed in this Court between the same parties. The parties are hereby referred to the extensive rulings filed by this Court in those cases for a full description of the long and tortured history of the parties' litigation before this Court.[1]

The instant lawsuit is the final lawsuit between the parties currently pending before this

---

[1] See *PHI, Inc. v. Office & Professional Employees Int'l Union, et al.*, Civil Action 06-1469; *Office & Professional Int'l Union, et al. v. PHI, Inc.*, Civil Action No. 06-2243; and *Sorensen, et al. v. PHI, Inc.*, Civil Action No. 07-0996. The Court's rulings in Civil Action No. 06-1469 and 06-2243 were appealed to the Fifth Circuit and were affirmed on all points except this Court's denial of attorneys' fees to PHI in the Return to Work Lawsuit

Court. In the instant case, the Unions, after years of rejecting the Green Book as binding the parties, now attempt to adopt the Green Book as the binding CBA between the parties, only to have PHI now refuse to acknowledge the Green Book as now applicable to the parties *as their' CBA*. In this lawsuit, the Unions argue PHI's refusals to acknowledge the Green Book as the binding CBA between the parties and to pay certain retention bonuses allegedly due under that CBA, violate various provisions of the Railway Labor Act, 45 U.S.C. §151 *et seq.* ("RLA"). As their requested relief, the Unions seek (1) a declaration from this Court that the Unions and PHI are parties to a CBA effective July 2, 2009 through July 1, 2013; (2) a declaration that the Green Book is the CBA between the parties; (3) a mandatory injunction ordering PHI to sign and date the 2009-13 CBA; (4) a mandatory injunction ordering PHI to pay its pilots the retention bonus required by Article 21 of that CBA, with interest retroactive to July 2, 2009; and (5) sanctions in the form of attorney's fees and costs.

PHI now seeks dismissal of the Unions' "claims."

## II. Law and Analysis

### A. Dismissal of "All Claims"

PHI seeks dismissal of, presumably, *all of the "claims"* alleged by the Unions in the instant lawsuit, however, perhaps, incorrectly argues in its motion that "the Unions seek *only* equitable and injunctive relief in the Green Book suit." (Doc. 55, p. 2) (emphasis added). Notwithstanding PHI's argument, a review of the Unions' complaint shows in addition to their request for injunctive and equitable relief, the Unions also seek "as a sanction, in equity **or otherwise**, their reasonable attorneys' fees **and costs** in connection with this litigation." The parties' designation of claims is relevant, because although PHI argues for dismissal of *all* claims *for lack of subject matter*

*jurisdiction*, PHI does not address the Unions' claim for sanctions or costs in its briefing, however, neither have the Unions clarified the actual nature of the "sanctions" or basis for costs, which they seek. With the foregoing in mind, this Court addresses PHI's arguments in its motion.

### B.    Lack of Subject Matter Jurisdiction

PHI seeks dismissal of the Unions' "claims" (identified as claims for injunctive and/or equitable relief only) under, *inter alia*, Rules 12(b)(1) for *lack of subject matter jurisdiction* of the Federal Rules of Civil Procedure.[2] The Unions argue PHI is not entitled to dismissal under Rule 12(b)(1), because to be timely, a motion filed under this rule must be filed before responsive pleadings. In the instant case, PHI filed its answer on January 26, 2010, more than two years ago.

Notwithstanding the filing of the instant motion after PHI's answer was filed, Rule 12(h)(3) states "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." *See also Johnston v. United States*, 85 F.3d 217, 218 n. 2 (5th Cir.1996) ("Our review is not altered by the fact that the defendants did not move for dismissal based on the lack of subject matter jurisdiction because any federal court may raise the issue sua sponte at any time); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985) (stating it is the duty of the court to raise the issue of subject matter jurisdiction sua sponte). This Court relied upon the foregoing rule and its interpreting jurisprudence in dismissing the majority of the Unions' claims in the Bad Faith Bargaining and Return to Work Lawsuits, both of which were dismissed after answers were filed. Considering the foregoing, this Court concludes, notwithstanding the filing of an answer in this case, it is, nonetheless, not inappropriate for this Court to consider PHI's argument on the

---

[2] PHI also seeks dismissal of the Unions' claims pursuant to Rule 12(b)(6). The Unions argue PHI's motion, to the extent it seeks dismissal pursuant to Rule 12(b)(6), is untimely for the same reason it is untimely under Rule 12(b)(1). Because this Court believes dismissal of the claims for injunctive and/or equitable relief is proper under Rule 12(b)(1), the Court need not address dismissal under Rule 12(b)(6) as the Court will lack subject matter jurisdiction for those "claims" requiring injunctive and/or equitable relief.

issue *of subject matter jurisdiction* at this time.

That the questions raised in the instant motion present a question of this Court's subject matter jurisdiction cannot plausibly be disputed, although the Unions, for the first time in the protracted litigation between the parties, attempt to do so. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir.2000); *Robinson v. TCI/US W. Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997). In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *See, e.g., Robinson v. TCI/US W. Communications, Inc.*, 117 F.3d 900, 904 (5th Cir. 2005) ("A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

In the instant case, the statute upon which PHI relies in seeking dismissal – the Norris LaGuardia Act – states:

> No court of the United States, as defined in this chapter, *shall have jurisdiction* to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. §101 (emphasis added). Because this Court concludes, as it has at other stages of the litigation between the parties (which, again, has spawned several lawsuits), that the instant case, also, arises out of the same major labor dispute as the dispute giving rise to the Bad Faith Bargaining Lawsuit and the Return to Work lawsuit, both of which were dismissed for lack of subject matter

4

jurisdiction, this Court concludes a dismissal of the Unions' claims for injunctive and/or equitable relief for lack of subject matter jurisdiction is appropriate.[3]

### B. Claims for injunctive and/or equitable relief

As a general matter, the Unions allege PHI violated the following provisions of the RLA when they failed to acknowledge the Green Book as the binding CBA between PHI and the Unions and failed to pay the allegedly-due retention bonus required by Article 21 of the allegedly applicable CBA: 45 U.S.C. 151(a)(1) and (4); 152, First; 152, Second; 152, Seventh; and 156.[4] The Court,

---

[3] With respect to Rule 12(b)(6), the Unions argue PHI relies on materials outside the pleadings and thereby runs afoul of Rule 12(d), which requires that motions decided under Rule 12(b)(6) must be limited to consideration of the pleadings. In the instant case, PHI has attached certain "extra-pleading" materials to its motion to dismiss, in support of its alternative argument that the Unions are not entitled to mandatory injunctive relief in light of their unclean hands in attempting to "accept" the Green Book as the existing CBA after years of rejecting the Green Book. This Court concludes the Unions are not entitled to mandatory injunctive relief even without the Court's consideration of these materials as this Court lacks the subject matter jurisdiction to grant such injunctive relief. For this reason, and because this Court concludes dismissal of the Unions' claims for injunctive and/or equitable relief is appropriate for lack of jurisdiction, this Court finds it unnecessary to convert the instant motion to one for summary judgment.

This Court notes however, that even if the issues raised in the motion did not implicate this Court's subject matter jurisdiction, this Court could properly convert the instant motion to a motion for judgment on the pleadings pursuant to Fed. R.Civ. P. Rule 12(c). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180, *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

[4] 45 U.S.C. §151a(1) states:

> The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein . . . .

45 U.S.C. §151a(4) states:

> The purposes of the chapter are: (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions . . . .

45 U.S.C. §152, First states:

> First. Duty of carriers and employees to settle disputes

now, addresses the Unions' specific requests for relief.

### 1. The Unions' request for mandatory injunctive relief

In the instant case, the Unions seek the following mandatory injunctive relief:

- a mandatory injunction ordering PHI to sign and date the 2009-13 CBA; and

- a mandatory injunction ordering PHI to pay its pilots the retention bonus required by Article 21 of that CBA, with interest retroactive to July 2, 2009

---

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. §152, Second states:

> Second. Consideration of disputes by representatives
>
> All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

45 U.S.C. §152, Seventh states:

> Seventh. Change in pay, rules, or working conditions contrary to agreement or to section 156 forbidden
>
> No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

45 U.S.C. §156 states:

> §156. Procedure in changing rates of pay, rules, and working conditions

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

6

PHI argues the Unions' requests for mandatory injunctive relief are barred by the Norris LaGuardia Act ("NLGA") because the Unions rejected the NMB's proffer of arbitration, thus, arguing this Court lacks subject matter jurisdiction, and by the principles of equity should the Court have subject matter jurisdiction, because the Unions have unclean hands.

### a. Availability of injunctive relief under the NLGA

The Court addresses the NLGA argument first. Section 1 of the NLGA states:

> **No court** of the United States, as defined in this chapter, *shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.*

29 U.S.C. §101 (emphasis added).

Section 8 of the NLGA states:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

29 U.S.C. §108.

In *Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, v. Toledo, P. & W. R. R.* *("Toledo")*, 321 U.S. 50, 58-59, 64 S.Ct. 413, 418 (1944), the United States Supreme Court discussed the interrelation of the RLA and the NLGA and was one of the first courts to reconcile the Acts' purposes. In *Toledo*, the Court stated:

> The policy of the Railway Labor Act was to encourage use of the nonjudicial processes of negotiation, mediation and arbitration for the adjustment of labor disputes. The over-all policy of the Norris-LaGuardia Act was the same. The latter did not entirely abolish judicial power to impose previous restraint in labor controversies. *But its prime purpose was to restrict the federal equity power in such matters within greatly narrower limits than it had come to occupy.* It sought to

> make injunction a last line of defense, available not only after other legally required methods, but after all reasonable methods as well, have been tried and found wanting. This purpose runs throughout the Act's provisions. It is dominant and explicit in Section 8. ***In short, the intent evidenced both by words and by policy was to gear the section's requirements squarely into the methods and procedures prescribed by the Railway Labor Act.***

321 U.S. at 58-59 (emphasis added).

In *Toledo*, the Supreme Court specifically framed the issue as one involving **the jurisdiction of the court**, stating:

> The question, broadly stated, is whether [the railroad] made "every reasonable effort to settle the dispute, as the section requires. ***On the facts this narrows to whether its <u>steadfast refusal</u> to agree to arbitration under the [RLA]'s provisions made [Section 8] operative.*** We think it did, ***with the consequence that the federal courts were <u>deprived of the power to afford injunctive relief</u> and [the railroad] was remitted to other forms of legal remedy which remained available.***

*Id.* at 56 (emphasis added).

PHI argues the Unions are not entitled to injunctive relief for the same reasons the Unions were not entitled to injunctive relief in both the Bad Faith Bargaining and Return to Work Lawsuits, *i.e.*, the Unions admittedly rejected the NMB's proffer of arbitration. As this Court noted in its previous ruling in the Bad Faith Bargaining Lawsuit,

> **In essence, the Unions are asking this Court to force PHI to do something PHI has already done or not done – at a time when *the Unions* have already availed themselves of the self-help remedy of striking, and PHI has already availed itself of its self-help options.** Once within self-help, "economic warfare" has been declared and in this case, deliberately chosen by both parties. The Unions' request for an injunction ordering PHI to restore the status quo at this juncture is similarly misplaced. The status quo cannot be restored at this point, both parties are years into self-help and once within self-help the "status quo" is, again, "economic warfare." Indeed, the Unions are, in fact, not requesting that all pre-self help wages be restored (as doing so *would result in the lowering of wages for certain pilots*). In point of fact, the Unions' strike cannot be undone; the wage changes instituted once into self-help and operated under for many years cannot effectively be undone, and the request for **interim relief** in order to allow judicial determination of a justiciable issue is

8

wholly misplaced under the facts of this case.[5]

The Unions argue they are merely seeking to "codify PHI's principal act of self-help; its unilateral imposition of changed terms and conditions of employment in the Green Book." However, the Unions' argument ignores the fact that PHI's imposition of changes to the conditions of employment was a legal self-help option, and that, under the terms of "economic warfare" entered into willingly by the parties, so long as the parties remain in self-help, PHI could change the conditions of employment and can change those conditions yet again. What the Unions are asking this Court to do is to step in and judicially call a "cease fire" between the parties selected economic war fare, because the Unions have now decided – for whatever reason – they now, want to be governed by the modified version of the Green Book. However, as this Court has noted, its role as a referee in such disputes is sharply limited:

> **The parties chose to end their negotiations nearly four years ago, and each party chose to then engage in self-help for almost four years.** To wit, the Unions went on strike, and PHI implemented wage increases for certain pilots. The strike, clearly, cannot be undone at this juncture, and the Unions are not asking this Court to retroactively lower the wages of any pilots. The entire CBA was contained within the respective Section 6 notice; PHI was on notice the Unions could strike; the Unions were on notice PHI could change wages and conditions. Both chose to accept that risk, to allow either, through operation of an argued equitable relief to gain advantage one over the other does harm to the discussed policy concerns specifically protected by Congress in the language of the NLGA. Additionally, this Court notes the Unions have since adopted the "Green Book" arguing it should be the CBA between the parties, illustrating the operation of the pressures brought to bear within self-help and the argued lack of a true legal controversy.[6] ***The RLA and NLGA***

---

[5] *See* Memorandum Ruling, Doc. 461, at pp. 18-19. To the extent they address the interplay between the RLA and the NLGA and the foregoing statutes' bar on injunctive and/or equitable relief, this Court adopts and incorporates its rulings in the Bad Faith Bargaining and Return to Work Lawsuits as if set forth herein in their entirety. *See* Docs. 461 and 475 in Civil Action No. 06-1469.

[6] The Unions point out the foregoing language as evidencing the Unions' acceptance of the Green Book as the CBA between the parties and this Court's understanding of same. However, at the time this Court issued the Ruling in question, the issues raised in the Green Book Lawsuit were not before the Court, and any language appearing to acknowledge an "acceptance" of the Green Book by the Unions was not directed to the specific legal

9

*contemplate the operation of those very pressures now complained of, when in self-help, and the Acts interplay makes it clear Congress intended to severely limit the Court's involvement in ameliorating those pressures.*[7]

Any argument that the instant lawsuit comprises a different labor dispute than the one at issue in the Bad Faith Bargaining and Return to Work Lawsuit, and therefore, the failure of the Unions to accept the NMB's proffer of arbitration does not preclude injunctive relief in this case, is not persuasive. As this Court has pointed out, the Unions' previous attempts to distinguish the disputes between the parties in both the Bad Faith Bargaining Lawsuit and the Return to Work Lawsuit as separate and distinct labor disputes is immaterial, as the NLGA itself does not require that the two disputes between the parties be the same dispute in order for the NLGA's prohibition against injunctive relief to operate.[8]

Additionally, it is not lost on this Court that the Green *Book is not an **agreement** between the parties **that was negotiated** by the parties.* Rather, the Green Book is the term used to describe the set of conditions *PHI chose to implement* – as was its right – once the parties decided to enter into self-help – a set of conditions the Unions mightily resisted.[9] The risk to the Unions upon entering

---

question now before the Court.

[7] *See Memorandum Ruling*, Doc. 461, at p.44.

[8] Notwithstanding the lack of a requirement that the parties be engaged in one dispute for the prohibition against injunctive relief to exist, this Court suggests the present dispute between the parties is, in fact, a continuation of the earlier broad labor dispute between the parties that this Court has already adjudicated. This Court suggests the broad labor dispute exists on a continuum, "with the dispute beginning with the exchange of Section 6 Notices between the parties – signaling the desire of the parties to begin bargaining over the [CBA] – meandering through the bargaining and mediation process, then [simmering] through the thirty-day "cooling-off" period, and finally [exploding into] continuing to self-help, a recognized stage within the RLA process, the period in which PHI argues [and this Court agrees,] the parties remain [within] to this day." *See Memorandum Ruling*, Doc. 475, at p 12.

[9] As the Court stated in *International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Varig Brazilian Airlines, Inc.*, 855 F.Supp. 1335, 1345 (E.D.N.Y.1994) ("*Varig*"):

*Implementation of Varig's changes and elimination of the union security clause does not "strike a fundamental blow to union ... activity and the collective bargaining process itself"; does not "prevent[ ] the scheme of the RLA from working"; and is not a "measure ... inherently destructive*

10

self-help included the one at hand, i.e. that PHI would implement the terms of the Green Book, while the risk to PHI included the one which occurred and remains, i.e. that the Unions would strike. PHI was forced to bear the burden of a strike in September 2006; the Unions to bear the burden of the PHI changes found within the "Green Book." As incongruous as it might seem, to order PHI to acknowledge or accept the Green Book *as a negotiated and agreed to CBA* would, in effect, undercut the single most effective tool PHI has to force a resolution of the ongoing labor dispute between the parties and undercut the selected state of self-help, and would, also, act to circumvent the extensive statutory scheme put in place to direct and govern labor interactions, such judicial intervention would result in an uneven playing field – for both sets of parties – and illustrate the very type of judicial interference the statutory schemes seek to avoid and would support a notion wholly contrary to the principles of the RLA. Indeed, it would seem the most obvious way to resolve the parties' dispute is to go back to the bargaining table and *engage in negotiations and concessions* to create a negotiated CBA as contemplated by the extensive regulatory scheme put into place by Congress. This Court will not alleviate the pressure brought to bear on either party, no matter how strongly the Unions might argue such an action would, *in their view*, promote the core policies of the RLA.

Significantly, on appeal, the Fifth Circuit affirmed this Court's conclusion that PHI did not violate the RLA by making unilateral changes during self-help, agreeing with this Court that such conduct was permissible unless it struck a "fundamental blow" to the Unions, and specifically finding PHI's actions did not strike such a blow to the Unions. In so concluding, the Fifth Circuit expressly did not reach the question of whether the Unions' pre-self-help rejection of arbitration

---

*of union ... activity" precisely because the Union was on notice that if the parties could not reach a meeting of the minds, these changes were possible.* The changes implemented by Varig do not impede the Union's ability to strike or attract new members, nor has it thwarted the RLA's mediation procedure; to the contrary, these changes are a direct result of the failure of the RLA's mediation procedure.

11

barred the Unions from seeking injunctive or other equitable relief for the alleged bad faith bargaining of PHI. However, despite the lack of a definitive ruling on this issue on appeal, and in light of the ruling(s) the Fifth Circuit *did* make, this Court, again, concludes the Unions and PHI are not entitled to injunctive relief in light of the application of the NLGA. This Court, also, concludes PHI's refusal to acknowledge the Green Book *as the CBA between the parties* does not warrant injunctive relief for the Unions. PHI is free to implement any changes in working conditions it chooses while in self-help, so long as such actions do not strike a fundamental blow to the Unions. Again, the changes unilaterally adopted PHI at one point in this exceedingly regrettable battle, and which were, at that same point rejected by the Unions, were never negotiated or agreed to, at the same time, by both parties as a CBA. In fact, just as the Unions have and can, over time, change their position as to those PHI conditions, so too is PHI free to change their position as to those very same conditions. Furthermore, pivotally, the unilaterally imposed changes put into place within "self-help," are not, *by their very nature*, a negotiated and agreed to CBA. This Court concludes the refusal of PHI to acknowledge the Green Book *as the CBA* between the parties is within PHI's freedom of choice while in self-help, and is a permissible form of self- help which does not strike a fundamental blow to the Unions under the circumstances of this case; the Unions and PHI can, at anytime, chose to step back into the contemplated formal dance established to govern bargaining and negotiation within the applicable regulatory scheme.

For the foregoing reasons, this Court concludes the Unions are not entitled to mandatory injunctive relief.

### b. Availability of injunctive relief under general principles of equity

PHI further argues the Unions also, are not entitled to injunctive relief under the general

principles of equity, because they have unclean hands.[10] PHI argues the Unions' rejection of arbitration in the main labor dispute extends to the instant case, because the parties are still involved in the same major dispute giving rise to both the Bad Faith Bargaining and Return to Work Lawsuits. This Court agrees and, thus, notes the same limitations on this Court's subject matter jurisdiction apply. The parties remain in self-help, and their ongoing dispute continues. During this ongoing dispute, economic pressures have been brought to bear on both sides, which is a contemplated result of the RLA process and self-help, a result the parties bargained for when they stepped out of the arbitration process. Because the instant lawsuit is part of the same ongoing dispute between the parties, the "unclean hands" argued by PHI in rejecting arbitration with PHI is better characterized as the trigger for application of the NLGA and thus, prevents the Unions from obtaining the requested injunctive relief from this Court, in any form, including an order forcing PHI to acknowledge the Green Book as the CBA between the parties in the instant lawsuit. This Court, also and again, concludes PHI's refusal to acknowledge the Green Book as the CBA between the parties does not warrant injunctive relief for the Unions, because such action does not strike a fundamental blow to the Unions as both parties can step back into the regulatory process for creating a CBA at any time.

For the foregoing reasons, the Unions are not entitled to mandatory injunctive relief under the general principles of equity.

### 2. The Unions' request for non-injunctive, equitable relief

The Unions seek (1) a declaration from this Court that the Unions and PHI are parties to a

---

[10] This Court does not consider the argument of PHI that the Unions have unclean hands because they previously rejected the Green Book as that would be a substantively based determination, which would be inappropriate if this Court lacks subject matter jurisdiction over the issue itself. Rather, this Court notes that the Unions, in effect, pursuant to NLGA "lack clean hands" because they rejected arbitration in the labor dispute and thus, this Court lacks subject matter jurisdiction over the requested form of injunctive relief requested.

CBA effective July 2, 2009 through July 1, 2013; and (2) the CBA in question is that CBA. As this Court noted in its ruling in the Bad Faith Bargaining Lawsuit, a suit for declaratory judgment is essentially an equitable cause of action.

For the reasons already stated in both this ruling and the previous rulings of the Court in the related litigation(s), and based upon the express language of Section 8 of the NLGA and the Supreme Court in *Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, v. Toledo, P. & W. R. R. ("Toledo")*, 321 U.S. 50, 58-59, 64 S.Ct. 413, 418 (1944), this Court concludes the Unions are barred from obtaining the declaratory judgment they seek because they rejected arbitration in the major dispute between the parties, a dispute which continues to this day.[11] This Court notes, again, however, that should this Court be in error as to the application of the NLGA, this Court would find the Unions lack the "clean hands' within the factual dispute surrounding the Green Book – having steadfastly rejected it before now choosing to embrace it when it suits their ever shifting purposes and thus, equitable relief would not be due. Additionally, this Court also finds a fundamental blow has not been struck as the Unions can return to the formal bargaining process contemplated by the regulatory scheme, at any time.[12]

---

[11] This Court concludes it need not consider the remaining arguments asserted by PHI in support of its motion, as this Court lacks subject matter jurisdiction to award the relief requested by the Unions.

[12] In *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the Supreme Court emphasized the following with respect to requests for declaratory relief in the context of a labor dispute:

> "The disagreement must not be nebulous or contingent but must have taken a *fixed and final shape* so that a court can see what legal issues it is deciding, **what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.**"

(emphasis added)

### C. The Unions' request for sanctions

In their Complaint, the Unions request "[t]hat the Court award the Unions, as a sanction in equity *or otherwise*, their reasonable *attorneys' fees* and *costs* incurred in connection with this litigation." (emphasis added) Based on the somewhat vague manner in which the prayer for attorneys' fees and costs has been couched in the Complaint, it is unclear to the Court whether the Unions' request for sanctions in the form of attorneys' fees and costs is in the nature of a request for equitable relief, i.e., *sanctions under the RLA* (similar to the sanctions requested in the Return to Work Lawsuit), whether the request is in the nature of a general equitable award, or whether the request for attorneys' fees and costs is more akin to one asserted by a prevailing party under Rule 54(d) of the Federal Rules of Civil Procedure.

To the extent the Unions seek attorneys' fees and costs as an equitable relief, i.e., *a sanction for PHI's alleged violations of the RLA*, it would appear such sanctions are not available to the Unions under the circumstances of this case. The Unions sought sanctions in the Return to Work Lawsuit, and based their request for such sanctions on *United Industrial Workers of the Seafarers Int'l Unions of North America v. Board of Trustees of Galveston Wharves*, 400 F.2d 320 (5th Cir. 1968 ) ("*Galveston Wharves*"). It is unclear whether the sanctions sought in the instant case are similar to the sanctions requested in the Return to Work Lawsuit. However, to the extent the extant request for sanctions is similar to the request for sanctions in the Return to Work Lawsuit, this Court has noted the award of sanctions under *Galveston Wharves* is in the nature of *general equitable relief*, which arguably is barred by the NLGA for the reasons noted and furthermore is relief requiring clean hands on the part of the Unions, as follows:

> Against this backdrop, the Unions seek equitable and/or injunctive relief for PHI's actions taken during the period of "self-help" and its resultant "economic

15

warfare." The Unions seek such relief pursuant to, *inter alia*, *Galveston Wharves*. In short, the Unions are asking this Court to "make them whole" for alleged violations of the RLA *during the self-help period* after the Unions have opted not to use every method available to it to settle its disputes with PHI and avoid the very economic pressures of which they now complain; the Unions **chose to place themselves into self-help;** they **chose "economic warfare"** and **now complain of its impact** and the expected consequence of that choice. A close reading of *Galveston Wharves* shows sanctions were awarded in that case to Union employees *in a scenario in which the Union itself had clean hands and the employer, solely, had unclean hands, during the bargaining period*. See *Galveston Wharves*, 400 F.2d at 324 ("But for the <u>unilateral change of 'working conditions' by the Carrier</u> through the leasing of the elevator facilities, the Carrier-employee relationship would have continued <u>throughout the bargaining period</u>."). As noted, *Galveston Wharves* does not involve actions of the employer that took place during the period of self-help; rather, the employer in *Galveston Wharves* made a unilateral change in the *status quo* **during the bargaining period**, to address actions of the employer that did violence to the RLA's statutory scheme. The sanction imposed in *Galveston Wharves* was tied to the particular violation of the RLA – a violation of Section 6 (a unilateral change in the *status quo* during *the bargaining period*) – in a manner that gave force and effect to that particular provision of the Act that had been violated, and provided equitable remedy to the Unions *who presented with clean hands*, during *the bargaining period*.

In the instant case, as set forth in explicit detail in this Court's Memorandum Ruling in the Bad Faith Bargaining Suit [Doc. 461], *the Unions have **unclean** hands*, having ***rejected the NMB's proffer of arbitration, and having chosen self-help, and its subsequent "economic warfare,"*** which is wholly distinguishable from the facts of *Galveston Wharves*. Thus, to award a sanction to the Unions in a situation where the Unions rejected the offer of arbitration, chose to opt for self-help, engaged in economic warfare themselves, by going on strike, and thus, have unclean hands, would not only *not* give force and effect to the RLA, rather, it would *do violence* to the Act by allowing the Unions to avoid the consequence of having in effect, "thumbed their nose" at a proferred opportunity to settle their disputes with PHI by the offered arbitration. Furthermore, to grant the requested relief under these facts would be contrary to the stated policy of both the RLA and NLGA as explained above. Although the Unions had every right to reject arbitration, move into self-help, declare and engage in a strike, they cannot now come to this Court and obtain sanctions or an injunction against PHI for having done the same – after the fact, urging relief from the very consequence of their choice to exercise those rights rather than accept the offered arbitration. . . . .[13]

---

[13] *See* Memorandum Ruling, Doc. 475, at pp. 17-19.

16

For the same reasons this Court concluded the Unions were not entitled to sanctions in the Return to Work Lawsuit – *i.e.*, the Unions have unclean hands – this Court concludes the Unions are not entitled to sanctions in the instant case. Additionally, and only because the actual nature of the claim made is so obtuse, this Court notes the Unions, also, initially rejected and attacked the very "Green Book" they now wish to hold on high as a negotiated and agreed to CBA. Thus, in addition to all other reasons given, this Court, also for these reasons, would find the Unions are not due the relief sought as their hands on this discrete issue would be "unclean."

Finally, to the extent the Unions seek "sanctions" as a prevailing party, this Court notes Rule 54(d) entitles a prevailing party only to costs (and not attorneys' fees). Furthermore, it would appear the Unions would not be entitled to such costs, as they have not "prevailed" in the instant case.

Notwithstanding the foregoing, it is unclear whether this Court can even consider the underlying claim for sanctions itself, as this Court has held it *lacks subject matter jurisdiction* over those claims barred by the Norris LaGuardia Act. However, as it is not clear to this Court what the nature of the request for sanctions entails, i.e. whether they are equitable in nature and, thus, barred by the NLGA, and as PHI prays for dismissal of "all claims," out of an abundance of caution only, this Court will permit the Unions to clarify the nature of request for "sanctions." Considering the foregoing, it is ORDERED that within 5 days, should the Unions wish to pursue that claim before this Court, the Unions shall clarify the nature and basis of their request for sanctions, contained within ¶D ("Relief Requested") of the Unions' Complaint, Doc. 1 in a brief not to exceed 5 pages, normal fonts and margins. Within five days thereafter, PHI shall clarify the relief it seeks with respect to that clarified request for sanctions in a brief not to exceed 5 pages, normal fonts and margins. **THIS COURT IN NO WAY INVITES BRIEFING, DISCUSSION OR ARGUMENT**

ON ANY ISSUE ON WHICH THIS COURT HAS ALREADY RULED, OR AN ENLARGEMENT OF THE PLEADINGS IN ANY MANNER WHATSOEVER. RATHER, THE BRIEFING SHALL <u>SOLELY</u> ADDRESS <u>ONLY</u> THE NARROW ISSUE OF THE NATURE AND LEGAL BASIS OF THE UNIONS' CLAIM FOR SANCTIONS AS SET FORTH ABOVE.** Both briefs shall also address, based upon the nature of the claim for sanctions, whether all claims within the instant lawsuit should be dismissed *with or without* prejudice.[14]

### III. Conclusion

For the foregoing reasons, this Court concludes the Unions' claims for injunctive and/or equitable relief will be granted for lack of subject matter jurisdiction, and the foregoing claims will be dismissed without prejudice. However, this Court will defer entering a final ruling on the motion as to all claims until this Court has received and considered the parties' briefs, if any, filed within the time alloted, in connection with the Unions' claim for sanctions. Therefore,

IT IS ORDERED that within 5 days, should the Unions wish to pursue a claim for "sanctions" which is not equitable in nature, the Unions shall clarify their request contained within ¶D ("Relief Requested") of the Unions' Complaint, Doc. 1 in a brief not to exceed 5 pages, normal fonts and margins. Within five days thereafter, PHI shall clarify the relief it seeks with respect to the request for sanctions in a brief not to exceed 5 pages, normal fonts and margins and if the Unions argue the relief requested is not equitable in nature, whether possible dismissal should be with or without prejudice. **THIS COURT IN NO WAY INVITES BRIEFING, DISCUSSION OR

---

[14] This Court notes a dismissal without prejudice of the Unions' claims for injunctive and/or equitable relief is mandated upon dismissal for lack of subject matter jurisdiction. However, the parties shall address whether a ruling by this Court based upon the court's lack of subject matter jurisdiction over injunctive and equitable relief extends to and embraces a "claims" made by the Union.

ARGUMENT ON ANY ISSUE ON WHICH THIS COURT HAS ALREADY RULED, OR AN ENLARGEMENT OF THE PLEADINGS IN ANY MANNER WHATSOEVER. RATHER, THE BRIEFING SHALL <u>SOLELY</u> ADDRESS <u>ONLY</u> THE NARROW ISSUE OF THE NATURE AND LEGAL BASIS OF THE UNIONS' CLAIM FOR SANCTIONS AS SET FORTH ABOVE. SHOULD NO BRIEFS BE FILED WITHIN THE 5 DAYS ALLOTTED, THE COURT WILL ISSUE FINAL RULING AND JUDGMENT.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __24__ day of September, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE